FILED
02/19/2020
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 15, 2019 Session

## JOHN R. FULLER v. ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA

**Appeal from the Chancery Court for Hamilton County**
**No. 17-0629     Pamela A. Fleenor, Chancellor**

_____

### No. E2018-02267-COA-R3-CV

_____

Plaintiff John R. Fuller initially brought this action, on July 15, 2015, for fraud, negligence, and violation of the Tennesee Consumer Protection Act (TCPA). After taking a voluntary nonsuit, he refiled on August 24, 2017. The trial court granted summary judgment to defendant Allianz Life Insurance Company of North America, holding that the fraud and negligence claims were time-barred by operation of Tenn. R. Civ. P. 4.01(3), which provides that "[i]f a plaintiff or counsel for a plaintiff . . . intentionally causes delay of prompt issuance or prompt service of a summons, the filing of the complaint . . . will not toll any applicable statutes of limitation or repose." It is undisputed that plaintiff's counsel, despite knowing how to properly serve process on defendant, delayed service for almost seven months, until after the applicable three-year statutes of limitations for fraud and negligence had run. The trial court further held that plaintiff's TCPA claim was barred by an applicable statute of repose. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which ANDY D. BENNETT and THOMAS R. FRIERSON, II, JJ., joined.

Whitney Durand, Chattanooga, Tennessee, for the appellant, John R. Fuller.

Rachel M. Lary and Benjamin S. Willson, Birmingham, Alabama, and Douglas M. Campbell, Chattanooga, Tennessee, for the appellee, Allianz Life Insurance Company of North America.

1

# OPINION

## I.

The following factual and procedural history is not disputed. This is established by defendant's Tenn. R. Civ. P. 56.03 statement of undisputed material facts and plaintiff's response, among other things. Plaintiff's first action (*Fuller* I) was filed on July 15, 2015, against both defendant Allianz and Community National Bank. The Clerk and Master issued a summons in *Fuller* I for Allianz, addressed to CT Corporation System. CT Corporation System advised plaintiff's counsel that it was not authorized as an agent to accept service of process for Allianz. A second summons, addressed to Allianz's general counsel, was issued and delivered. Receipt for this summons was properly returned and filed, and, thus plaintiff effectively served process on Allianz in early August of 2015. Plaintiff voluntarily nonsuited *Fuller* I on September 8, 2016.

Plaintiff later filed new separate actions against Allianz and Community National Bank. This action against Allianz was filed on August 24, 2017. A summons for defendant that was again erroneously addressed to CT Corporation was issued. This summons was mailed by plaintiff, prompting a similar second notification by CT Corporation on November 15, 2017, that it was not defendant's agent for acceptance of service of process. Plaintiff's counsel did not attempt to properly serve defendant until March 20, 2018, when he returned the unserved summons, and obtained and mailed a second summons to defendant's general counsel.

Defendant filed a motion to dismiss. Attached to defendant's memorandum in support of the motion were some eight exhibits, including copies of pleadings filed in *Fuller* I, the order dismissing *Fuller* I, four summonses issued to defendant over the entire course of litigation, a signature page of a contract between plaintiff and defendant, and several articles of correspondence from plaintiff's counsel to defendant. Defendant argued for dismissal on the following grounds:

> All three of Plaintiff's claims (for negligence, fraud and violation of the Tennessee Consumer Protection Act ("TCPA")) are barred by the statutes of limitations based on the face of the [a]mended [c]omplaint. The [a]mended [c]omplaint was filed on March 19, 2018, more than three years after Plaintiff alleges he first discovered the allegedly tortious conduct in February 2015. The [a]mended [c]omplaint does not relate back to the date of filing of the original [c]omplaint because Plaintiff intentionally waited more than seven months to serve Allianz with the original

2

[c]omplaint while he pursued parallel claims against Community National Bank in this Court.

Plaintiff responded by arguing that the motion to dismiss improperly requested the trial court to consider matters outside the pleadings, stating, "[t]his is a motion to dismiss, not one for summary judgment, and Fuller will not agree to convert it to the latter."

The trial court carefully considered the issue of whether it should treat the motion to dismiss as a summary judgment motion pursuant to Tenn. R. Civ. P. 12.02.[1] At a hearing on the motion, the court asked the parties to submit briefs on this question. After they did so, the trial court entered an order stating as follows:

> [I]n *Jones v. Vasu*, 326 S.W.3d 577 (Tenn. Ct. App. 2010), [the Court] stated that the issue on appeal was whether [plaintiff's] intentional delay in issuance and service of process rendered the filing of the complaint ineffective under T.R.C.P. 4.01(3). The trial court had denied defendants' motions to dismiss, or in the alternative, for summary judgment. . . .
>
> [The Court] noted that defendants' motions were predicated on the date of service of process [and] determined that the date of service was a matter outside of the complaint. . . .
>
> Thus even though there is much precedent for the proposition that this Court can consider certain matters outside of the complaint in ruling on a motion to dismiss, the *Jones v. Vasu* case states that consideration of the date of service of process is consideration of a matter outside of the complaint.
>
> From all of which this Court concludes that to determine this motion, the Court will be required to review the record in the prior case [*Fuller* I], and the summonses, which are all

---

[1] Tenn. R. Civ. P. 12.02 provides in pertinent part as follows:

> If, on a motion asserting the defense numbered (6) to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

matters outside of the complaint. Therefore this Court, out of abundance of caution, will treat Defendant's motion to dismiss as one for summary judgment and dispose of it as provided in Rule 56.

Defendant filed a statement of undisputed material facts, to which plaintiff filed a response, which stated in pertinent part as follows:

> Despite having been twice put on notice that CT Corporation System was not Allianz's agent for service of process in Tennessee, Fuller's attorney waited until March 2018 to attempt proper service of the August 2017 Complaint on Allianz. **RESPONSE. The fact is undisputed only for purposes of the ruling on the motion for summary judgment.**
>
> * * *
>
> Fuller's attorney has admitted, both in Plaintiff[']s Response to Defendant's Motion to Dismiss (filed May 24, 2018), as well as in oral argument on June 4, 2018, that there are "reasons other than tactics for delay of service of process in this case." Fuller's attorney has failed, however, to provide this Court with any other reason for delay of service. **RESPONSE. These facts are undisputed**.

(Bold font in original; paragraph numbering and citations to record in original omitted).

By agreement of the parties, the motion for summary judgment was submitted and considered without a hearing or oral argument before the trial court. In its order granting defendant summary judgment, the trial court reasoned and ruled as follows in its order:

> The Court determines that [defendant] has properly supported its motion for summary judgment that Plaintiff's claims for fraud and negligence are time barred. . . . [Defendant] has shifted the burden of production to Plaintiff to show that a genuine issue of material fact exists for trial.

4

Plaintiff may not now simply rest upon mere allegations in his complaint, but must offer proof, by way of affidavits or otherwise, setting forth specific facts showing that there is a genuine issue for trial. In the instant case, Plaintiff did not file any affidavit in response to the motion. Nor did Plaintiff dispute any of the pertinent [statements of undisputed material fact]. . . .

Rather than file an affidavit evidencing efforts to serve [defendant], Plaintiff merely argues that Defendant's motion fails because of "the absence of proof of the essential element of intent on the part of Fuller or his counsel to delay service of process for reasons of strategy."

\* \* \*

As to Plaintiff's intentional conduct, Defendant established that Plaintiff had discovered in *Fuller* I that CT Corporation was not the registered agent for [defendant]. . . . When CT Corporation again advised Plaintiff in November of 2017 that it could not accept service for [defendant], Plaintiff did not return this unserved summons within 90 days.

Tenn. R. Civ. P. 4.03(1) provides in pertinent part that, "if a summons is not served within 90 days after its issuance, it shall be returned stating the reasons for failure to serve." The failure to return a "served" summons within 90 days does not in and of itself bar a plaintiff's action. *Fair v. Cochran*, 418 S.W.3d 542 (Tenn. 2013). However, this Court determines that the failure to return an "unserved" summons within 90 days can be, along with other external factors, evidence of intent to delay prompt service of summons.

Here the other external factors include that although Plaintiff had successfully served general counsel for [defendant] previously in *Fuller* I, and thus knew how to serve [defendant], yet Plaintiff did not even attempt to serve [defendant's] general counsel until seven months after he filed *Fuller* II. Further[,] in *Fuller* I, Plaintiff had sued both

[defendant] and Community National Bank (CNB), whereas in *Fuller* II, Plaintiff only sued [defendant]. . . . Defendant asserts Plaintiff delayed in serving [defendant] with the summons and complaint in *Fuller* II in order to enjoy the tactical advantages of leveraging the discovery and motion practice in the litigation against CNB[2] without [defendant] being able to participate and to prevent the claims against [defendant] and CNB from being consolidated again. Thus [defendant] has demonstrated reasons why Plaintiff would want to "slow walk" this case. Dismissal is proper where there is a conscious decision not to promptly serve process because of some perceived advantage to the plaintiff in delaying service. Plaintiff failed to respond to Defendant's demonstrated reasons for slow walking the case.

(Footnote added; internal citations omitted). The trial court concluded that defendant "established that the filing of *Fuller* II was ineffective to commence the action and to toll the statute of limitations under Rule 4.01(3), because Plaintiff intentionally delayed service until after the statute of limitations had run."

The trial court further examined plaintiff's fraud claim in light of the established undisputed material facts, and concluded, in the alternative, that plaintiff "failed to set forth facts of any fraudulent act of [defendant] and failed to demonstrate any duty [defendant] owed to Plaintiff." Plaintiff alleged that he was the victim of a Ponzi scheme perpetrated by Jack Brown, who persuaded plaintiff to purchase two annuities from defendant worth a total of $660,055. Brown thereafter persuaded plaintiff to withdraw money from the annuities. Defendant processed the withdrawal applications and mailed checks to plaintiff, addressed to plaintiff's post office box address of record. Brown intercepted these mailings, fraudulently forged plaintiff's endorsements on them, cashed them, and appropriated plaintiff's money. Brown had been licensed to sell annuities for defendant, but defendant terminated him "without cause" in September of 2009, more than five months after defendant mailed the last check to plaintiff's address.

The amended complaint alleges that Brown's "termination was changed to 'for cause' as of November 19, 2012, a week after involuntary bankruptcy proceedings against him were commenced." Plaintiff further alleged that he

---

[2] It is not disputed that plaintiff timely and properly served process upon CNB, the other defendant in *Fuller* I, in his second lawsuit against CNB, and continued to actively prosecute that litigation during the period of delay at issue in this action. The trial court's order in this regard so finding is not challenged by defendant on appeal.

did not know that he had become a victim of the Ponzi scheme until the bankruptcy proceedings. He did not know about Brown's forged endorsements on checks totaling $556,938 withdrawn from the Allianz annuities until February 2015 during discovery proceedings in a lawsuit. Consequently, he filed no bankruptcy claim regarding the Allianz annuities.

Brown died on August 31, 2013, and plaintiff was apparently unable to recover anything from him or his estate.

The trial court held that the undisputed facts establish that plaintiff willingly signed the applications to withdraw money from the annuities he purchased from defendant. The court further stated:

> [Defendant] processed the withdrawal applications signed by [plaintiff], made the checks out for the proper amounts to [plaintiff], and mailed the checks to the proper address of record for [plaintiff], which was his post office box in his name. Plaintiff only disputed that the checks were not mailed to [plaintiff] but instead to Brown though addressed to [plaintiff].

The trial court concluded that plaintiff did not provide any evidence from which a trier of fact could reasonably conclude that defendant committed any act of fraud, nor that it was aware of Brown's fraudulent activities. The court said that plaintiff's only claim against defendant directly was that it failed to notify plaintiff of Brown's termination in 2009, which it characterized as a potential fraudulent concealment claim, but held that "Plaintiff's evidence is insufficient to establish an essential element of Plaintiff's claim, *i.e.*, a duty to disclose."

Regarding plaintiff's TCPA claim, the trial court held that it suffered from a trifecta of fatal deficiencies: (1) "the TCPA does not provide a cause of action for an aiding and abetting a TCPA violation" as alleged by plaintiff; (2) the TCPA's five-year statute of repose barred his claims; and (3) at the time plaintiff's claim accrued, the TCPA had been amended to provide that only the State Attorney General can bring a TCPA claim under Tenn. Code Ann. § 47-18-104(B)(27) (2013 & Supp. 2019).

Plaintiff filed a Tenn. R. Civ. P. 59.04 motion to alter or amend summary judgment. In support of the motion, plaintiff argued that he was submitting "new evidence that is critically important to him" in the form of three affidavits. These

affidavits are not in the technical record. They are said by plaintiff to have been those of Stuart James, an attorney who worked for plaintiff on this case for some time but apparently eventually withdrew; Mr. James' legal assistant; and the legal assistant for plaintiff's other counsel at that time and on appeal. Following a hearing, the trial court denied the motion to alter or amend, holding, in pertinent part, as follows:

> the [m]otion improperly seeks to re-litigate matters already adjudicated, to introduce evidence that could have been adduced and presented while the [m]otion for [s]ummary [j]udgment was pending, and Plaintiff's counsel admitted at the hearing that Plaintiff did not submit the affidavits in opposition to the motion for summary judgment because Plaintiff did not deem them "necessary," that the controlling law has not changed, and that said [m]otion is not well taken or proper[.]

Plaintiff timely filed a notice of appeal.

## II.

Plaintiff raises the following issues:

1. Did the trial court err in granting summary judgment to defendant?

2. Did the trial court err in denying plaintiff's motion to alter or amend its summary judgment ruling?

## III.

In the recent case of ***TWB Architects, Inc. v. Braxton, LLC***, 578 S.W.3d 879 (Tenn. 2019), the Supreme Court set forth the following guidance on our standard of review of summary judgment:

> A trial court should grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. In reviewing a trial court's ruling on a motion for summary judgment, we make a fresh determination about whether the requirements of Rule 56

8

have been met. *Rye v. Women's Care Ctr. of Memphis*, 477 S.W.3d 235, 250 (Tenn. 2015). Our review of the trial court's ruling is de novo, with no presumption of correctness. On review, we accept the evidence presented by . . . the nonmoving party as true; allow all reasonable inferences in its favor; and resolve any doubts about the existence of a genuine issue of material fact in favor of [the nonmoving party].

In *Rye*, we stated our holding as follows:

> [W]hen the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense.

*Rye*, 477 S.W.3d at 264.

In *Rye*, we intended to "correct course, overrule *Hannan* [v. *Alltel Publ'g Co.*, 270 S.W.3d 1 (Tenn. 2008)], and fully embrace the standards articulated in the *Celotex* trilogy." *Id*. *Hannan*'s summary judgment standard that "a moving party who [does not bear the burden of proof at trial] must either (1) affirmatively negate an essential element of the nonmoving party's claim; or (2) show that the nonmoving party cannot prove an essential element of the claim *at trial*" had proven to be unworkable. *Hannan*, 270 S.W.3d at 8–9 (emphasis added).

We intended for the summary judgment standard adopted in *Rye* to apply to all parties, no matter which party filed the motion for summary judgment.

\*     \*     \*

9

[I]f the moving party bears the burden of proof on the challenged claim at trial, that party must produce at the summary judgment stage evidence that, if uncontroverted at trial, would entitle it to a directed verdict. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting) (citations omitted). The burden then shifts to the nonmoving party to produce evidence showing that there is a genuine issue of fact for trial. *Id*. On the other hand, when the nonmoving party has the burden of proof at trial, the burden shifting is the same as that set forth by this Court in *Rye*—the moving party may either negate an essential element of the nonmoving party's claim or show that the nonmoving party does not have sufficient evidence to prove an essential element of its claim. *Id*. (citations omitted).

\* \* \*

The emphasis under the *Rye* standard is the evidence *at the summary judgment stage*. Whether the nonmoving party is a plaintiff or a defendant—and whether or not the nonmoving party bears the burden of proof at trial on the challenged claim or defense—at the summary judgment stage, "[t]he nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party." *Rye* at 265. This is the standard Tennessee courts must apply when ruling on summary judgment motions regardless of which party bears the burden of proof at trial.

*TWB Architects*, 578 S.W.3d at 887-89 (emphasis and brackets in original; internal citations omitted).

# IV.

## A.

We initially briefly discuss plaintiff's contention on appeal that the trial court "mistakenly converted [defendant's] motion to dismiss to a motion for summary judgment." As defendant asserts, plaintiff abandoned this argument in the trial court below, and thus he has waived it on appeal. Plaintiff argued in his initial motion to alter or amend that "the [trial c]ourt had no authority to convert the motion to dismiss to one for summary judgment, but if it did, the conversion was an abuse of its discretion." Shortly thereafter, plaintiff filed a document captioned "amendment of plaintiff's motion to alter or amend summary judgment with supporting memorandum of law," in which he stated:

> Pursuant to T. R. Civ. P. 59.04, John R. Fuller has moved the Court to reconsider and revise its order of October 10, 2018 on the Defendant's motion to dismiss. *He now eliminates his request dealing with the conversion of the Defendant's [m]otion to [d]ismiss to a [m]otion for [s]ummary [j]udgment.* His original motion dated November 9, 2018 *has thus been modified and reduced . . .*

(Emphasis added). Plaintiff, in "eliminat[ing] his request" to the trial court to consider his argument and correct the asserted error below, thereby waived it and cannot now ask this Court on appeal to rule on it. Moreover, under these circumstances, we do not believe the trial court committed error, let alone reversible error, in taking the more expansive approach of treating the motion to dismiss as one for summary judgment pursuant to Rule 12.02. Such an approach allowed both parties a full and fair opportunity to conduct discovery, make arguments, and present what evidence they desired to support their cases. *See, e.g.*, **Indiana State Dist. Council of Laborers v. Brukardt**, No. M2007-02271-COA-R3-CV, 2009 WL 426237, at \*7 (Tenn. Ct. App., filed Feb. 19, 2009) (stating "[i]f converted, then the nonmoving party is 'entitled to submit affidavits in opposition to the [m]otion and to make further discovery if such is necessary.' ") (quoting **Brick Church Transmission v. Southern Pilot**, 140 S.W.3d 324, 328 (Tenn. Ct. App. 2003)).

## B.

The trial court held that defendant established plaintiff's intentional delay in service of process until after the statute of limitations had run on his fraud and negligence

claims, finding them time-barred by operation of Tenn. R. Civ. P. 4.01(3), which provides:

> If a plaintiff or counsel for a plaintiff (including a third-party plaintiff) intentionally causes delay of prompt issuance or prompt service of a summons, the filing of the complaint (or third-party complaint) will not toll any applicable statutes of limitation or repose.

The trial court found that the conclusion of intentional delay was supported by numerous factors, including (1) the fact, undisputed by plaintiff, that despite having actual knowledge of precisely how to properly serve defendant, plaintiff waited until March 2018 to attempt proper service of the August 2017 lawsuit; (2) a perceived tactical advantage to plaintiff in delaying service of process against defendant while proceeding in the litigation against the second *Fuller* I defendant (*i.e.,* CNB); and (3) plaintiff's complete silence and declination to provide any evidence on the matter of intentional delay until after the court granted summary judgment.

As this Court observed in *Wright v. Shoney's Tenn1 LLC*, No. M2014-00731-COA-R3-CV, 2015 WL 4557169, at *2 (Tenn. Ct. App., filed July 28, 2015),

> A finding of "an intentional delay under Tenn. R. Civ. P. 4.01(3) mandates a conclusion that the original complaint was not effectively filed." *Jones v. Cox*, 316 S.W.3d 616, 621 (Tenn. Ct. App. 2008). The burden is on the moving party "to prove that the plaintiffs' failure to serve [the Defendant] was 'intentional' as that word is used in Rule 4.01(3)." *Crabtree v. Lund*, No. E2009–01561–COA–R3–CV, 2010 WL 4272738, at *6 (Tenn. Ct. App. Oct. 28, 2010).

In *Carnell v. TMNO Healthcare, LLC*, No. 13-1201, 2013 WL 5516460, at *2 (W.D. Tenn., filed Oct. 3, 2013), the Court correctly stated:

> Tennessee courts have made clear that "it is the *intent* to withhold service of process that is the test." [*Jones v. Vasu*, 326 S.W.3d 577,] at 581 [Tenn. Ct. App. 2010] (emphasis added). The courts have also consistently rejected any excuses for delay, holding that "an intentional delay under [4.01(3)] mandates a conclusion that the original complaint was not effectively filed." *Jones v. Cox*, 316 S.W.3d 616, 621 (Tenn. Ct. App. 2008) (service delayed awaiting

12

resolution of underlying case for legal malpractice claim); *see also Vasu*, 326 S.W.3d at 581 (service of process delayed "in order to obtain an expert opinion to support the medical malpractice claim"); *Estate of Butler v. Lamplighter Apartments*, 278 S.W.3d 321, 323 (Tenn. Ct. App. 2008) (delaying service of process in hopes of settling case).

In both **Wright** and **Crabtree**, we reversed the trial court's dismissal of a plaintiff's lawsuit for intentional delay in service of process. These cases are distinguishable from the current action, however, because in each of them, the plaintiffs presented evidence, in the form of counsel's affidavits, establishing their efforts to effect service and denying intent to delay. The **Wright** Court stated and held as follows:

> *The evidence in the record germane to the issue of whether the delay of service was intentional is contained in Plaintiffs' counsel's affidavits*, in which the following statements were made:

> \*     \*     \*

> I can and do affirmatively state that there was no decision by Plaintiffs or their counsel to intentionally delay service of this matter. Efforts were made to effect service by certified mail and later by personal service. Plaintiffs had no reason to delay service and gained no advantage particularly since this was a refiling after non suit and Plaintiffs had both been deposed and had identified medical providers at the time of the injury in the originally filed case prior to the Voluntary Non–Suit.

> \*     \*     \*

> Without question, Plaintiffs should have been much more diligent in their efforts, and we do not endorse Plaintiffs' approach to obtaining service of process. However,

13

Defendant failed [to] introduce any evidence contrary to the matters stated in counsel's affidavit or to show in any other fashion that Plaintiffs intentionally delayed service of process. *The evidence produced by Plaintiff is uncontradicted in the record* and preponderates against the court's finding that Plaintiffs intentionally delayed service of process.

*Wright*, 2015 WL 4557169, at *3-4 (emphasis added).

Similarly, in *Crabtree*, "plaintiffs' trial counsel countered with his own affidavit," which explained the efforts made to serve process,[3] and stated that the plaintiffs "had every reason to advance their claim for damages and absolutely no reason to *intentionally* delay this cause," and "[f]rom the date of filing of this action to the date process was served upon Defendant, Plaintiff[s] and affiant never had any reason or intent to withhold service of process." 2010 WL 4272738, at *3 (emphasis in original). We also discussed at some length the concept of tactical advantage as relating to an inference of intentional conduct, stating, in pertinent part, as follows:

The defendant does not identify any advantage, perceived or otherwise, that the plaintiffs gained as a result of process not being promptly service. By the same token, there is nothing about the plaintiffs' alleged cause of action that might prompt them or their counsel to want to delay service of process; quite to the contrary, if the allegations of the complaint are true, they appear to have a good case. Furthermore, there are no external factors appearing in the record that arguably might suggest that it was in the plaintiffs' best interest to "slow walk" their case. Simply stated, the record contains no evidence that the plaintiffs *intentionally* delayed service of process.

*Crabtree*, 2010 WL 4272738, at *6 (emphasis in original). In his separate concurrence, Chief Judge Swiney clarified that a perceived tactical advantage is not *required* to be shown as a condition of applying Rule 4.01(3), but that it could be considered as a factor supporting a demonstration of intentional conduct, stating:

I do not think Rule 4.01(3) concerns itself with why a plaintiff intentionally delayed the issuance or service of a

---

[3] The *Crabtree* Court "note[d] in passing that we are not convinced that this case involves even negligent lawyering. Efforts were clearly made to effect service." 2010 WL 4272738, at *5 n.6.

14

summons, only with whether the delay was intentional. *Proof that there was some actual or "perceived advantage to the plaintiff in delaying service" might well be evidence that the delay was intentional*, but the existence of such an actual or "perceived advantage to the plaintiff" is not, I believe, a requirement of Rule 4.01(3). The only question under Rule 4.01(3) is whether the delay was intentionally caused by plaintiff or plaintiff's counsel.

*Id.* at \*7 (Swiney, J., concurring) (emphasis added). Contrary to the situations in *Wright* and *Crabtree*, the trial court in the present case found that defendant had shown a perceived tactical advantage in delay, finding that defendant "demonstrated reasons why Plaintiff would want to 'slow walk' this case" and that "Plaintiff failed to respond to Defendant's demonstrated reasons for slow walking the case."

More significantly, unlike in *Wright* and *Crabtree*, in this case plaintiff elected to provide absolutely no evidence pertaining to the allegation of his intentional delay. Neither did plaintiff offer any argument or explanation for waiting seven months to properly serve defendant. Plaintiff knew that his second attempt to serve defendant by mailing to CT Corporation was as unsuccessful as his first attempt in *Fuller* I, yet he waited, without explanation, despite having actual knowledge of how to properly serve defendant from having done so in *Fuller* I. The trial court stated that plaintiff's "attorney has failed to provide this Court with any other reason for delay of service," and further stated:

> Rather than file an affidavit evidencing efforts to serve [defendant], Plaintiff merely argues that Defendant's motion fails because of "the absence of proof of the essential element of intent on the part of Fuller or his counsel to delay service of process for reasons of strategy."

Plaintiff relies upon the *TWB Architects* decision, wherein the Supreme Court observed that "summary judgment is seldom appropriate in cases wherein particular states of mind are decisive as elements of [a] claim or defense because determining a state of mind depends entirely upon the conflicting inferences to be drawn from evidence so likely to be circumstantial or, if direct, self-serving." 578 S.W.3d at 892 (quoting *HCA, Inc. v. American Protection Ins. Co*, 174 S.W.3d 184, 193 (Tenn. Ct. App. 2005) (internal quotation marks omitted)). In *TWB Architects*, the issue was whether the parties intended to create a novation to a contract. The Court emphasized that "[t]his case is rife with conflicting evidence" and that the credibility of the two key witnesses was questionable and subject to challenge because of the inconsistent and contradictory

15

evidence presented on both sides. *Id.* at 895. The Supreme Court described at length the conflicting evidence presented by both parties, and the potentially divergent inferences that could reasonably be drawn therefrom, and reversed summary judgment. *Id.* at 895-96. By contrast, in the present case there is no conflicting evidence on the dispositive issue, because as already discussed, plaintiff elected not to present any to the trial court. Consequently, we affirm the trial court's grant of summary judgment to defendant.

## C.

Plaintiff argues that the trial court erred in refusing to grant his Rule 59.04 motion to alter or amend its judgment. "It is well-settled that a trial court's ruling on a motion to alter or amend may be reversed only for an abuse of discretion." *Harmon v. Hickman Community Healthcare Servs., Inc.*, No. M2016-02374-SC-R11-CV, 2020 WL 428431, at *7 (Tenn., filed Jan. 28, 2020) (again emphasizing "the limitations inherent in the abuse of discretion standard"). The Supreme Court set forth the factors to be considered in deciding a motion to alter or amend when additional evidence is provided in support of such a motion, as follows:

> (1) the movant's efforts to procure the newly offered evidence when responding to the motion for summary judgment; (2) the importance of the newly offered evidence to the movant's case; (3) the movant's explanation as to why the newly offered evidence was not offered in response to the motion for summary judgment; (4) any unfair prejudice to the respondent; and (5) any other relevant considerations.

*Id.* at *4 (citing *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003)). Plaintiff does not dispute that he had the newly offered evidence within his knowledge and possession prior to the motion for summary judgment. The three proffered affidavits appear to consist largely of records and correspondence from his own attorneys and their staff. The trial court held that the evidence "could have been adduced and presented while the [m]otion for [s]ummary [j]udgment was still pending," referencing counsel's admission that they were not because they were deemed "unnecessary." Plaintiff offered no other explanation for "why the newly offered evidence was not offered in response to the motion for summary judgment." *Stovall*, 113 S.W.3d at 721.

This Court has on several occasions stated that

> [i]n order to sustain a motion to alter or amend under Rule 59.04 based on newly discovered evidence, it must be shown that the new evidence *was not known to the moving party*

16

*prior to or during trial and that it could not have been known
to him through exercise of reasonable diligence.*

***Bough v. Tenn. Dep't of Corr*.**, No. E2017-02350-COA-R3-CV, 2018 WL 4181877, at
*3 (Tenn. Ct. App., filed Aug. 30, 2018) (quoting ***Kirk v. Kirk***, 447 S.W.3d 861, 869
(Tenn. Ct. App. 2013) (emphasis in original; internal quotation marks omitted); *accord*
***Seay v. City of Knoxville***, 654 S.W.2d 397, 399 (Tenn. Ct. App. 1983); ***Wilson Sporting
Goods Co. v. U.S. Golf & Tennis Centers, Inc.***, No. E2010-02651-COA-R3-CV, 2012
WL 601804, at *5 (Tenn. Ct. App., filed Feb. 24, 2012). The present case does not
involve "newly discovered evidence," but the governing principle applies here: when it is
shown that the movant to alter or amend has knowledge and possession of the newly
presented evidence before a motion for summary judgment is decided, and fails to present
it the first time around without a compelling reason, the Rule 59.04 motion should be
denied. As we aptly observed in ***Robinson v. Currey***,

> [t]he non-moving party must fully oppose a motion for
> summary judgment before it is granted rather than rely on
> Rule 59.04 to overturn a summary judgment after only
> weakly opposing the motion.

153 S.W.3d 32, 39 (Tenn. Ct. App. 2004) (affirming denial of Rule 59.04 motion where
"Plaintiffs made no showing of due diligence and offered no explanation as to why the
newly submitted evidence could not have been submitted earlier").

Furthermore, even if we held that the plaintiff's newly presented evidence should
have been considered, which we do not, this Court could not review it, because the
affidavits are not included in the technical record on appeal. "A party raising issues on
appeal is responsible for furnishing the appellate court with a record that will enable that
court to reach the issues raised." ***Word v. Word***, 937 S.W.2d 931, 933 (Tenn. Ct. App.
1996); ***Kramer v. Kramer***, No. E2018-00736-COA-R3-CV, 2019 WL 1239867, at *4
(Tenn. Ct. App., filed Mar. 18, 2019). We affirm the trial court's denial of the motion to
alter or amend summary judgment.

### D.

Regarding plaintiff's fraud claim, the trial court found and held in pertinent part as
follows:

> Defendant established that [it] properly mailed the checks that
> Plaintiff requested. Brown intercepted and forged Fuller's
> endorsement on the checks. Defendant argues that Plaintiff

17

has not alleged any facts with particularity that demonstrate that [defendant] committed any fraudulent act as required by [Tenn. R. Civ. P.] 9.02. In construing the complaint liberally, the Court discerns Fuller's only allegation against [defendant] directly is that [it] failed to advise Fuller that [it] had terminated Brown in 2009. Thus Fuller's fraud cause of action against Allianz, at best, is for fraudulent concealment or nondisclosure of known facts. However both of these causes of action require a "duty to disclose."

. . . Only where there is a previous definite fiduciary relationship between the parties or where it appears one or each of the parties to the contract expressly reposes a trust and confidence in the other or where the contract or transaction is intrinsically fiduciary and calls for perfect good faith, does a duty to disclose exist. **Walker v. First State Bank**, 849 S.W.2d 337 (Tenn. Ct. App. 1992).

Here Plaintiff has alleged no such duty. The Court determines that Defendant has established it is entitled to summary judgment on grounds that Plaintiff has failed to state a claim of fraud against Fuller as Allianz demonstrated that Plaintiff's evidence is insufficient to establish an essential element of Plaintiff's claim, *i.e.*, a duty to disclose. Thus the Court determines Allianz has shifted the burden of production to Plaintiff to demonstrate a material issue of fact for trial.

Plaintiff may not now merely rest upon his allegations but must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of Fuller. **Rye**, 477 S.W.3d at 265. Here Fuller failed to set forth facts of any fraudulent act of Allianz and failed to demonstrate any duty Allianz owed to Plaintiff to disclose that it terminated Brown.

In Tennessee, "a party may be held liable for damages caused by his failure to disclose material facts to the same extent that a party may be liable for damages caused by fraudulent or negligent misrepresentations." **Patel v. Bayliff**, 121 S.W.3d 347, 352-53 (Tenn. Ct. App. 2003); *see also* **Robert J. Denley Co. v. Neal Smith Constr. Co.**, No. M2006-00629-COA-R3-CV, 2007 WL 1153121, at *6 (Tenn. Ct. App., filed Apr. 19,

2007) ("Concealment or non-disclosure of facts may also constitute fraud, if the party charged with fraud had knowledge of an existing fact or condition and a duty to disclose the fact or condition."). As reiterated in *Fulmer v. Follis*, No. W2017-02469-COA-R3-CV, 2018 WL 6721248, at *5 (Tenn. Ct. App., filed Dec. 20, 2018):

> "A party commits fraudulent concealment for failing to disclose a known fact or condition where he had a duty to disclose and another party reasonably relies upon the resulting misrepresentation, thereby suffering injury." *Dixon v. Chrisco*, No. M2018-00132-COA-R3-CV, 2018 WL 4275535, at *4 (Tenn. Ct. App. Sept. 7, 2018) (quoting *Odom v. Oliver*, 310 S.W.3d 344, 349 (Tenn. Ct. App. 2009) (internal quotation marks omitted). In order to establish a fraudulent concealment claim, a party must show "(1) the defendant had knowledge of a material existing fact or condition, and that (2) the defendant had a duty to disclose the fact or condition." *Id*. (quoting *Pitz*, 2004 WL 2951979, at *8).

In *Briggs & Stratton Power Prods. Grp., LLC v. Osram Sylvania, Inc.*, No. W2016-01799-COA-R3-CV, 2017 WL 5992361, at *11 (Tenn. Ct. App., filed Dec. 4, 2017), this Court stated,

> When does someone have a duty to disclose? " 'The duty to disclose arises when (1) there is a fiduciary relationship between the parties; (2) one of the parties has expressly reposed trust and confidence in the other; or (3) the contract is intrinsically fiduciary and calls for perfect good faith.' " *Gurley v. Hickory Withe Partners, L.P.*, No. W2002–02050–COA–R3–CV, 2003 WL 22204520, at *4 (Tenn. Ct. App. Sept. 10, 2003) (quoting *Cont'l Land Co., Inc. v. Inv. Props. Co.*, No. M1998–00431–COA–R3–CV, 1999 WL 1129025, at *6 (Tenn. Ct. App. Dec. 10, 1999)).

In the present case, plaintiff has not demonstrated that he was in a fiduciary relationship with defendant, that he expressly reposed trust and confidence in defendant, or that his contract with defendant is intrinsically fiduciary. There is no indication that the transactions between plaintiff and defendant were anything other than relatively simple commercial transactions, conducted at arm's length. Plaintiff purchased several annuities from defendant, and then applied for withdrawals from them. Defendant processed the withdrawal applications and mailed the checks, which named plaintiff as payee, to

plaintiff's address. Some five months later, defendant terminated Brown's employment as an agent licensed to sell its annuities. Plaintiff has not presented any evidence from which a trier of fact could reasonably conclude that defendant was under a duty to disclose this to plaintiff. "Without a duty to disclose, there can be no fraudulent concealment." *Id.* at *12.

**E.**

Plaintiff's TCPA claim is governed by a five-year statute of repose, Tenn. Code Ann. § 47-18-110, stating as follows:

> Any action commenced pursuant to § 47-18-109 shall be brought within one (1) year from a person's discovery of the unlawful act or practice, but in no event shall an action under § 47-18-109 be brought more than five (5) years after the date of the consumer transaction giving rise to the claim for relief.

The trial court found and held as follows regarding defendant's assertion of the statute of repose as an affirmative defense:

> Plaintiff alleges that Allianz aided and abetted Mr. Brown's violation of the TCPA. Plaintiff alleges Brown violated the TCPA by fraudulently endorsing and depositing two checks dated March 20, 2009. Thus the consumer transaction giving rise to Plaintiff's claim for relief occurred on March 20, 2009. Therefore any TCPA claim had to be filed by 2014. Plaintiff failed to file ***Fuller*** I until July 15, 2015. Thus the filing of ***Fuller*** II within one year from the non-suit of ***Fuller*** I does not preserve the barred action.

It is undisputed that the last "consumer transaction giving rise to the claim for relief" took place on March 20, 2009. Plaintiff did not file an action against defendant until 2015. We affirm the trial court's ruling that his TCPA claim is barred by the statute of repose.

20

## V.

The judgment of the trial court is affirmed. Costs on appeal are assessed to the appellant, John R. Fuller. The case is remanded to the trial court for collection of costs assessed below, if any.

_____
CHARLES D. SUSANO, JR., JUDGE